## ANNA HANSON v. W. F. BULMAHN.[1]

January 5, 1923.

No. 22,695.

**Opening and closing to the jury within the discretion of the trial court.**
    1. The matter of opening and closing to the jury rests largely in the discretion of the trial court. In an action on a promissory note by an indorsee, where the indorsement is denied, the plaintiff is properly allowed to close.

**Whether plaintiff was good faith holder of note properly submitted to jury.**
    2. An agent of a chemical company undertook to assist plaintiff, a buyer, to make a resale of goods purchased from the chemical company. He made a sale to another purchaser in the name of the chemical company and took notes to the company for the purchase. Reasons for this course were given which might seem sufficient to the jury. He then indorsed the note to plaintiff. The evidence is sufficient to warrant the court in submitting to the jury the question whether plaintiff was a bona fide holder of the note in due course.

**No error.**
    3. There was no error in the charge or in the admission of evidence.

Action in the district court for Houston county to recover $1,000 upon a promissory note. Defendant interposed a counterclaim for $1,650. The case was tried before Catherwood, J., and a jury which returned a verdict for the amount demanded. From an order deny-

[1]Reported in 191 N. W. 586.

ing his motion for a new trial, Meighen, J., defendant appealed. Affirmed.

*Duxbury & Duxbury,* for appellant.

*William E. Flynn* and *Hopp & Larson,* for respondent.

HALLAM, J.

In July, 1916, the Eckman Chemical Company of Omaha entered into a contract with plaintiff's husband, L. A. Hanson, whereby it sold him 20 tons of stock powders, at 9 cents a pound, gave him the exclusive right to sell the powder in Houston county, Minnesota, and agreed to send a man for 30 days to assist him in the sale thereof. Plaintiff, though not named as a party to the contract, signed the contract with her husband. Notes were given for the price and apparently she signed the notes. Mr. Hanson had little success in disposing of the powders and the chemical company sent a representative, Mr. Albert, to assist in making sales. Albert, with some assistance from plaintiff's uncle, Mr. Goergen, disposed of about half of the product on hand to a Mr. Rauk. The balance of 10 tons he disposed of to defendant, at 10 cents a pound. Instead of negotiating a sale from the Hansons to defendant, as he was doubtless authorized to do, he negotiated a sale from the company to defendant, making the contract on one of the company blanks. In the contract, defendant was given the exclusive right to sell said product in the east half of Houston county, the company reserved the right to cancel the contract and enter the territory and sell the stock if defendant did not sell in satisfactory quantities, and defendant agreed to handle the company products exclusively. The company agreed to send a salesman for two weeks to assist in sale of the goods. The 10 tons were sold f. o. b. Caledonia, future orders to be shipped from Omaha, the company to give enough free goods to cover freight. Albert took from defendant, in payment of the price of the 10 tons sold, two notes of $1,000 each, one due in three months and one in six months, both payable to the order of the company. These were indorsed by Albert, in the name of the company, to plaintiff. Albert testified that he took the contract in the company name to protect the company's interest, since plaintiff was

"back on her payments," to procure a prospective buyer for the company for future deliveries of goods, and to protect defendant, on future shipments and orders, to assure him the territory assigned, and to fix the place of shipment and liability for freight, and that plaintiff surrendered her interest in the product upon receipt by her of the notes. Albert testified that he had authority from the company to do the acts which he did.

The contract with defendant provided that the agreement should not be valid unless countersigned by the secretary and treasurer of the company. It was not so countersigned. It appears, however, that, within a month, the company sent its salesman to assist defendant in the resale, as the contract provided. There is also evidence that, some time later, defendant called the attention of the company home office to the contract, and that the secretary, in a letter written in answer, while denying knowledge of the transaction, again offered to assist defendant in the resale.

About a month after the notes were given, the first note was presented to defendant by an agent of the company and defendant settled the note by payment of $900. This action is brought to recover on the second note. Defendant denied liability, and as a counterclaim sought to recover the amount paid on the first note.

The main defense was fraud. In substance it was as follows: Defendant claimed that Mr. Albert and Mr. Goergen, acting on behalf of plaintiff, falsely represented to defendant that they were agents of the chemical company, and that they wished to secure defendant as an agent to handle the company's products; that they represented that the stock powder was a useful stock remedy; that it would sell readily and that when a customer once bought he would voluntarily buy again; that defendant entered into the contract supposing he was dealing with the chemical company and tried in good faith to sell the powder; that the representations proved false; that these men were not agents representing the chemical company, but in fact were acting in behalf of plaintiff; that the stock powder was worthless and unsalable, and that the powder delivered to him was the property of the plaintiff and not of the company, and that these men, with plaintiff, planned together to

defraud defendant and induce him to enter into this pretended agency, and to buy this powder and to sign these notes.

Plaintiff denied the fraud and alleged that she was a bona fide holder for value in due course. The jury found for plaintiff. Defendant appeals.

1. The court denied defendant the right to close the argument to the jury. Defendant contends this was error. The matter of the opening and closing to the jury rests generally in the discretion of the trial court, and an erroneous decision upon that question will not ordinarily warrant a reversal. State v. Nelson, 116 Minn. 424, 430, 133 N. W. 1010. We think, however, that the burden of proof in this case was upon the plaintiff. For example, defendant, in a verified answer, denied the indorsement of the notes and denied the authority of Albert to make the indorsement and in fact denied his authority to take the note. It is difficult to see how plaintiff could recover without proof on the trial of a legal inception and a legal indorsement of the note. The court properly allowed plaintiff the closing argument.

2. Defendant assigns as error that "the court erred in submitting to the jury the issue of whether plaintiff was a bona fide holder of the note in controversy in due course."

The court instructed the jury that if they found that the agents of the chemical company negotiated this agency contract with defendant and took these notes as representatives of the chemical company, and if they further found that these notes, before they fell due, were, by the authorized agents of the chemical company, indorsed and transferred in good faith for value to plaintiff, who accepted them in good faith, without knowledge of any defense on defendant's behalf, that would make plaintiff a bona fide holder and would entitle her to a verdict.

Then he instructed the jury that if they should find "in the defendant's favor upon his allegations and claims of fraud, then the plaintiff cannot recover * * * That is, * * * [if] these men who went out and negotiated for this agency contract, and these notes," in behalf of plaintiff and procured the notes by false representations, "plaintiff cannot recover," and in conclusion the

court submitted two forms of verdict and said "if there is no fraud in this case and you so find by your verdict, Mrs. Hanson is entitled to recover" and one form of verdict should be used, "but if you find from the evidence that there was fraud, that these agents and Mrs. Hanson committed this fraud upon Mr. Bulmahn, as he alleges * * * then Mr. Bulmahn is entitled to recover," and the second form of verdict should be used.

It is not clear that, under these instructions, plaintiff could recover in any event, if the notes were obtained, in the first instance, by fraud. However, under the state of facts as above narrated, it seems to us there is an issue of fact as to whether these notes had a legal inception in the hands of the chemical company, and as to whether plaintiff was a holder in due course as defined by G. S. 1913, § 5864 (Neg. Inst. Act, 52) without actual knowledge of any infirmity or defect in the notes, or knowledge of such facts that her action in taking the instrument amounted to bad faith. See G. S. 1913, § 5868 (Neg. Inst. Act, 56.)

3. Defendant requested an instruction that the letter from the chemical company, to which reference has heretofore been made, does not amount to a "ratification of the contract claimed to have been entered into by Mr. Bulmahn unless accepted and acted upon by him." The letter was offered in evidence for the purpose of showing ratification or recognition by the chemical company of the agency contract and not, as defendant contends in his brief, "on the issue of ratification by defendant." The requested instruction seems to us to have no bearing on the issues in the case.

We see no error in receiving testimony to the effect that some buyers of the powders gave a second order, that one customer used it as treatment for sick hogs. This testimony had some bearing on the value and marketable character of the article which defendant contended was worthless and unsalable.

Order affirmed.


DIBELL, J. (dissenting.)

I dissent. In my view of the evidence there was no question for the jury upon the issue of good faith purchaser. The two notes

were given by the defendant to the chemical company for property of the plaintiff sold to the defendant, they were indorsed without recourse, and were delivered to the plaintiff. She gave no fresh consideration. The consideration was the sale of her property. She still owed the chemical company a part of the purchase price of the property sold to the defendant. When the first note was paid it was applied thereon. She was not a good faith purchaser and the note was subject to such defense, if any, as the defendant had. It probably need not be assumed that the defendant, as a matter of law, should recover upon his counterclaim if the plaintiff failed in her action.